Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 1, 2021

**2021 CO 40**

**No. 20SC438, *DePriest v. People* — Grounds for Dismissal — Mootness — Collateral Consequences.**

In this opinion, the supreme court reviews an order of a divided panel of the court of appeals, summarily granting the People's motion to dismiss the defendant's appeal from the revocation of his deferred judgment and sentence as moot.

The supreme court holds that the appeal is not moot because, if the defendant prevails in his appeal, his conviction would be vacated, his deferred judgment and sentence would be reinstated, and any sentences resulting from the improperly imposed conviction would be reversed. Because the defendant faces direct and collateral consequences from the revocation of his deferred judgment and sentence and the entry of the judgment of conviction, the division erred in dismissing his appeal as moot.

Accordingly, the supreme court vacates the order of dismissal and remand the case to the court of appeals to proceed with the appeal on the merits.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2021 CO 40**

**Supreme Court Case No. 20SC438**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA156

**Petitioner:**

Wesley Richard DePriest,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Vacated**
*en banc*
June 1, 2021

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Meredith K. Rose, Deputy Public Defender
        *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
William G. Kozeliski, Senior Assistant Attorney General
        *Denver, Colorado*

**JUSTICE BERKENKOTTER** delivered the Opinion of the Court.

¶1 We review the court of appeals' divided order in *People v. DePriest*, No. 18CA156 (Apr. 20, 2020), summarily granting the People's motion to dismiss the defendant's appeal from the revocation of his deferred judgment and sentence as moot. We hold that the appeal is not moot because, if the defendant prevails in his appeal, his conviction would be vacated, his deferred judgment and sentence would be reinstated, and any sentences resulting from the improperly imposed conviction would be reversed. Accordingly, we vacate the order of dismissal and remand the case to the court of appeals to proceed with the appeal on the merits.

## I. Facts and Procedural History

¶2 In June 2016, Wesley Richard DePriest entered into a plea agreement in which he pled guilty to third degree assault, a class 1 misdemeanor, and attempted sexual assault, a class 5 felony. The trial court approved the plea agreement and sentenced DePriest to a four-year deferred judgment and sentence ("DJS") on the attempted sexual assault charge and a concurrent four-year term of probation on the third degree assault conviction. The terms of the DJS and probation included, but were not limited to, sex offender intensive supervised probation ("SOISP").

¶3 In September 2017, DePriest's probation officer filed a complaint alleging that DePriest violated certain terms and conditions of his DJS and his misdemeanor probation. Following a hearing, the trial court agreed. It revoked DePriest's DJS and his misdemeanor probation and entered the judgment of

2

conviction on the attempted sexual assault count. The court then resentenced DePriest to a five-year term of SOISP on that count, and revoked and reinstated his misdemeanor probation for a concurrent five-year term. In January 2018, DePriest appealed the order revoking his DJS, arguing that certain conditions of the DJS were unconstitutional.

¶4 While this appeal was pending, DePriest violated the terms of his SOISP. Following a hearing, the trial court revoked his SOISP and sentenced him to three years in prison on the attempted sexual assault conviction. DePriest did not appeal the 2019 revocation of his SOISP and, instead, served his remaining time in the Department of Corrections.

¶5 In April 2020, the People filed a motion to dismiss DePriest's appeal as moot, arguing that, even if the court of appeals reversed the 2017 revocation of his DJS, the decision would have no practical effect on DePriest because the 2019 revocation of his SOISP superseded the revocation of his DJS. A divided panel of the court of appeals granted the People's motion and summarily dismissed DePriest's appeal as moot. *DePriest*, at *1. Judge Grove dissented, concluding that if DePriest were to prevail in his appeal, reversal of the trial court's ruling would have a practical effect on DePriest because his DJS would be reinstated and any sentences resulting from the improperly imposed conviction would be reversed. *Id.* at *2–3 (Grove, J., dissenting).

3

¶6 We granted certiorari and now vacate the division's order of dismissal and remand the case to the court of appeals to proceed with the appeal on the merits.

## II. Analysis

¶7 We begin by outlining the controlling law on the doctrine of mootness and the collateral legal consequences exception to the mootness doctrine. Next, we detail the law as it relates to deferred judgments and sentences. Then, applying the law to the facts of this case, we conclude that, if DePriest were to prevail in his appeal, reversal of the trial court's order revoking his DJS would have a direct and practical effect on him because his conviction would be vacated. It would also eliminate his exposure to collateral consequences. Accordingly, we conclude that DePriest's appeal is not moot.

### A. Legal Authority

#### 1. Mootness

¶8 We review de novo the question of whether an appeal is moot. *See People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 14, 465 P.3d 554, 558. "Colorado courts invoke their judicial power only when an actual controversy exists." *People in Int. of Vivekanathan*, 2013 COA 143M, ¶ 20, 338 P.3d 1017, 1020. When an actual controversy no longer exists, an issue becomes moot because any relief granted by the court would have no practical effect. *Id.* If an event occurs while a case is pending on appeal that makes it "impossible for the court to grant 'any effectual

relief' . . . to a prevailing party," the appeal must then be dismissed as moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)); *see also Stell v. Boulder Cnty. Dep't of Soc. Servs.*, 92 P.3d 910, 914 (Colo. 2004) ("[A] case is deemed moot when the relief granted by the court would not have a practical effect upon an actual and existing controversy."). But, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307–08 (2012) (quoting *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 442 (1984)).

¶9 Under the collateral consequences exception to the mootness doctrine, a case is moot "only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York*, 392 U.S. 40, 57 (1968). Collateral consequences can include prohibitions on a felon's ability to vote and own firearms, potential sentencing as a habitual criminal, possible impeachment based on prior convictions, and proscription from working in certain regulated professions. *Linnebur v. People*, 2020 CO 79M, ¶ 28, 476 P.3d 734, 740; *see also Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (observing various collateral consequences that can stem from a conviction, including the inability to serve as a juror and act as a labor union official).

¶10 Even if a sentence has been fully served, an appeal of the underlying conviction is not moot if there is a possibility that the conviction will give rise to collateral consequences. This is because the disabilities and burdens which may flow from a conviction give the defendant "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." *Carafas*, 391 U.S. at 237 (quoting *Fiswick v. United States*, 329 U.S. 211, 222 (1946)); *see also, e.g.*, *Minnesota v. Dickerson*, 508 U.S. 366, 371 n.2 (1993) (noting that, even though the diversionary sentence was successfully completed and the original charges were dismissed, Minnesota law provided that the record of the charges would be retained and used by courts in determining the merits of subsequent proceedings, and those collateral consequences were sufficient to preclude a finding of mootness); *Sibron*, 392 U.S. at 55 ("Subsequent convictions may carry heavier penalties, [and] civil rights may be affected." (quoting *United States v. Morgan*, 346 U.S. 502, 512–13 (1954)).

¶11 An appeal may be moot because the relief sought cannot be afforded through the appeal. *See, e.g.*, *People v. Garcia*, 89 P.3d 519, 520 (Colo. App. 2004) (holding that, because the defendant appealed a condition of his sentence rather than his conviction, the collateral consequences of his conviction still remained in effect, and therefore his appeal was moot); *People v. Garcia*, 2014 COA 85, ¶¶ 12, 14, 356 P.3d 913, 916 (holding that the appeal was moot because the defendant had

6

appealed his probation revocation rather than his conviction, which is what could have affected his immigration status).

¶12 An appeal can also become moot "because of subsequent occurrences." *Brown v. Colo. Dep't of Corr.*, 915 P.2d 1312, 1313 (Colo. 1996). In these types of cases, a subsequent occurrence provides a defendant with the relief he or she was seeking on appeal. For example, in *Brown*, the defendant sought either to be released from confinement or to be transferred back to Colorado. *Id.* Because, subsequent to the litigation, the defendant was transferred back to the Colorado State Penitentiary, the relief he sought was satisfied, thereby rendering the appeal moot. *Id*. at 1313–14. Likewise, in *Hunt v. State Department of Corrections*, 985 P.2d 651, 651–52 (Colo. 1999), this court held that the defendant's claims were moot because the only applicable remedy was for him to be returned to Colorado, and he had already been returned subsequent to filing a petition for writ of habeas corpus.

## 2. Deferred Judgment and Sentence

¶13 A DJS is not a conviction and it is not a sentence. Instead, it "is a dispositional alternative imposed *in lieu of* a judgment and sentence." *People v. Anderson*, 2015 COA 12, ¶ 15, 348 P.3d 491, 494. The deferred judgment statute authorizes a trial court, after acceptance of a defendant's guilty plea and upon consent of all parties, "to continue the case for the purpose of entering judgment

7

and sentence upon the plea of guilty for a period not to exceed four years for a felony . . . ." § 18-1.3-102(1)(a), C.R.S. (2020). "As a condition of continuing the case, the trial court is empowered to implement probation-like supervision conditions that the defendant must adhere to." *Kazadi v. People*, 2012 CO 73, ¶ 12, 291 P.3d 16, 20; *see also* § 18-1.3-102(2). Such conditions are established by a stipulation between the defendant and the prosecution and "shall be similar in all respects to conditions permitted as part of probation." § 18-1.3-102(2).

¶14 Unlike the consequence of a successfully completed probation sentence, when the defendant fully complies with the conditions of the deferred judgment for the prescribed period, "the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice." *Id.*; *accord Hafelfinger v. Dist. Ct.*, 674 P.2d 375, 377 n.3 (Colo. 1984) (After successfully completing a deferred judgment, the defendant "would no longer be 'convicted.'"). And, unlike the consequence of a probation violation, a court generally has no discretion to continue a deferred judgment upon finding a violation of a condition regulating the defendant's conduct. *Anderson*, ¶ 16, 348 P.3d at 494. Instead, the court must revoke the deferred judgment and "enter judgment and impose sentence upon the guilty plea." § 18-1.3-102(2). When a defendant successfully appeals the revocation of his DJS and the appellate court reverses the trial court's order, the

8

judgment of conviction is vacated and the DJS is reinstated. *People v. Anzur*es, 670 P.2d 1258, 1260 (Colo. App. 1983).

## B. Application

### 1. DePriest's SOISP Sentence Did Not Supersede His DJS

¶15 The People contend that DePriest's 2019 SOISP sentence superseded his 2017 DJS and that DePriest could have maintained a live controversy, thereby avoiding the issue of mootness altogether, by appealing the revocation of his SOISP sentence.

¶16 The People first assert that "following the revocation of his deferred judgment, apart from having judgment entered, DePriest stood in the same position as he would have had the first revocation never occurred—he was placed on SOISP." This argument acknowledges, then disregards the reason it is unavailing: That is, the judgment of conviction is the very reason that DePriest is not in the same position he was in before his DJS was revoked.

¶17 The People next cite to *People v. Fritz*, 2014 COA 108, ¶ 23, 356 P.3d 927, 931, for the proposition that DePriest's 2019 SOISP sentence superseded his 2017 DJS. *See id.* ("[B]ecause the new legal sentence necessarily supersedes the original sentence, our determination of whether his sentence was illegal would not have any practical effect on this case.").

9

¶18 In *Fritz*, the defendant appealed his allegedly illegal probation sentence. ¶ 10, 356 P.3d at 929. The only remedy available to Fritz in connection with his appeal was the imposition of a new, legal sentence. *Id.* Because Fritz subsequently pled guilty to a probation violation and stipulated to a new, legal sentence *after* filing his appeal, his appeal was moot. *Id.* at ¶ 23, 356 P.3d at 931. That is, there was no relief that the division could grant him. *Id.* at ¶ 11, 356 P.3d at 929.

¶19 But that is not what happened in this case. Here, DePriest appealed the allegedly improper revocation of his DJS, arguing that the terms of his DJS were unconstitutional. He seeks not the imposition of a new, legal sentence, but rather to have the entry of his conviction for attempted sexual assault vacated and his DJS reinstated.

¶20 Neither DePriest's subsequent sentence to SOISP nor his subsequent sentence to the Department of Corrections provide the relief he seeks. To the contrary, *if* DePriest succeeds in his appeal, the judgment of conviction will be vacated and those sentences will be reversed. Because the court of appeals can afford DePriest relief if he prevails, *see Anzures*, 670 P.2d at 1260, his appeal— unlike Fritz's—is not moot.

¶21 The People additionally claim that, in order to keep this controversy live, DePriest should have appealed the 2019 revocation of his SOISP sentence. We disagree. A defendant under these circumstances does not forfeit his right to

10

appeal the allegedly unconstitutional revocation of his DJS simply because he does not appeal the subsequently imposed sentence.

¶22 The People's argument also ignores the fact that the incentives for appealing a DJS revocation and a SOISP sentence revocation are different. DePriest had a much greater incentive to appeal the DJS revocation, which could ultimately erase his felony conviction. Conversely, DePriest had less of an incentive to appeal the SOISP revocation because, by 2019, the conviction had already entered and a three-year prison sentence, with credit for time served, may have been a strategic trade-off compared to continuing on SOISP. This is particularly true here because DePriest would have completed his prison sentence long before either appeal would have been resolved.

## 2. DePriest's Subsequent SOISP Violations

¶23 The People argue that DePriest's subsequent conduct, which constituted the basis for his 2019 SOISP revocation, should be considered as a sufficient, independent reason to hold that his appeal is moot. The People assert that the reasons underlying the 2019 SOISP revocation were unrelated to the constitutional rights at issue in DePriest's appeal and, therefore, the outcome of the appeal would not alter his subsequent revocation.

¶24 The People's argument is essentially that, even if the 2017 DJS was improperly revoked, it does not matter because DePriest ultimately violated his

11

probation. We find this argument unpersuasive. It ignores the fact that DePriest would not have been on probation in 2019 *but for* the revocation of his DJS in 2017, which he is appealing now. *See, e.g.*, *Anzures*, 670 P.2d at 1260 (holding that, because the court of appeals reversed the denial of the defendant's Crim. P. 35 motion, the trial court must "vacate the sentence imposed and . . . reinstate the deferred judgment"). Additionally, though DePriest's 2019 conduct would have violated the terms of the DJS if it had still been in effect, the DJS had already been revoked for two years.

¶25 Moreover, the People's argument invites us to speculate about what would have happened if DePriest's DJS was not revoked. That is a crystal ball into which we decline to gaze. Not only did DePriest have different incentives in successfully completing his probation, as we note above, but he also arguably lacked notice that his conduct would violate his DJS because he believed it to be, and it had been, in fact, revoked.

### 3. Collateral Consequences Attend DePriest's Conviction

¶26 Finally, to determine if DePriest's appeal of the revocation of his DJS is moot, we examine whether there is any possibility that any collateral consequences may flow from his challenged conviction. *Moland v. People*, 757 P.2d 137, 139 (Colo. 1988). That is, we look to the practical consequences that would result if the court of appeals reached the merits of DePriest's appeal and ruled in

12

his favor. Here, because the trial court revoked DePriest's DJS and entered the judgment of conviction for attempted sexual assault, DePriest has a felony conviction on his record. He faces the various collateral consequences associated with that conviction, including his potential inability to own firearms, work in certain professions, and act as a labor official. *See Carafas*, 391 U.S. at 237; *Linnebur*, ¶ 28, 476 P.3d at 740. He may also possibly face impeachment based upon the prior conviction and possibly be sentenced as a habitual criminal in subsequent criminal cases. *Linnebur*, ¶ 28, 476 P.3d at 740. Thus, a decision by the court of appeals on the merits of DePriest's appeal, if favorable, could have a real and practical legal effect on DePriest.

## III. Conclusion

¶27 Because DePriest faces direct and collateral consequences from the revocation of his DJS and the entry of the judgment of conviction, the division erred in dismissing his appeal as moot. Accordingly, we vacate the order of dismissal and remand the case to the court of appeals to proceed with the appeal on the merits.